CHEHARDY, Judge.
Appellant, Edward Warrendorff, has appealed an administrative review board decision that maintained his appointing authority’s right to discipline him by demoting him from fire chief to inspector and reducing his pay.
This action was precipitated by an incident of June 8, .1978 when appellant, as Chief of the Fire Prevention Bureau of Jefferson Parish, left the district to which he was allegedly assigned, without first obtaining the authorization from a superior, for the purpose of assisting in an arson investigation in Lafitte, Louisiana. The appointing authority maintains Warrendorff was guilty of insubordination because on many occasions he had been verbally instructed not to leave the Consolidated District of the East Bank of Jefferson without permission from a superior. In June 1978, the employer asserts appellant should have consulted either Fire Superintendent John Grego or Parish Safety Director Allan Amundson.
Chief Warrendorff received a request to assist in a marine fire arson investigation from the fire chief in Lafitte (outside his alleged district) and after attempting to dispatch either one of two subordinates who were unavailable for this assignment, he decided to go himself. Before leaving, appellant testified, he informed his secretary and Inspector Reiger, another employee, of his destination. This was confirmed by Officer Roy Pete, who accompanied him to Lafitte. The appointing authority disputes that any contact was made, but in view of the result we reach we need not resolve the conflict. Warrendorff and Pete concluded their investigation within five hours of leaving the East Bank office and reported back at 4:15 p. m. that day.
By letter of June 19, 1978 written by Superintendent Grego and approved by Director Amundson, appellant was advised:
“On Wednesday June 7, 1978 I referred a call to you from Chief Mumphrey of the Kenner Fire Department whereupon he hold me that he tried to reach you but you were not in. Later in the day I inquired as to your whereabouts and was informed by your office personnel that you were probably in Lafitte, La. inspecting a boat fire.
“When I asked you for a written statement concerning your activities for the day of June 7, you stated that you made all arrangements and decisions and placed yourself on ‘Special Assignment’.
“When I read your statement I wasn’t surprised as you have made a habit over a period of years of leaving your area of jurisdiction without my permission or pri- or knowledge. Repeatedly I have had to discipline you because of your rash actions.
*536 “I still do not think you fully realize that I, or the Safety Director give you permission to leave your jurisdiction for inspections or Special Assignments. You do not have the authority to place yourself on special assignments. Over the past eight years this has been repeatedly explained to you verbally and you were given written reprimands dated as follows: 8-20-70, 9-24-70, 12-16-70, 1-9-73, (2) on 1-18 — 74, & 9-27-74. (copies attached)
“I feel that your actions do not reflect the proper attitude of a Chief Officer of the Jefferson Parish Fire Division. You should be setting an example for your subordinates, especially by using the Chain of Command. These actions shall not be tolerated.
“Therefore, under the circumstances, I am relieving you of your duties as Fire Prevention Chief upon receipt of this letter. You shall remove all personal belongings from your office, clear your desk and turn your car over to me immediately. You shall be demoted to a Fire Prevention Inspector with the appropriate reduction in pay to Range # 23, Maximum Step # 4, Salary $1,280 per month and shall be given a car allowance in lieu of a parish car.
“You are charged with Jefferson Parish Manual of Responsibilities, Rules & Regulations Chapter II, Section 3, 3.1, 3.2 Paragraph B, Chapter IV, Section 1, 1.1. Rules of Ethics of the Department of Safety, Title III, Chapter B, Article 59 & 67.
“Under the Jefferson Parish Personnel Rules, you have a right to appeal this action to the Personnel Board. Forms designed to assist you in filing an appeal may be obtained from the Personnel Department, Room 818 — New Gretna Courthouse, Gretna, Louisiana, or Room 208, 3330 N. Causeway Blvd., Metairie, Louisiana.
“If you elect to file an appeal, you must do so in writing within thirty (30) calendar days of the effective date of action complained against you.”
The letter of notice states the strict disciplinary action was taken because Chief Warrendorff had been insubordinate on numerous occasions in the past and the June 7, 1978 incident evidenced his refusal to adhere to the chain of command rules despite repeated reprimands. The review board based its affirmance on a finding of a “history of insubordination.”
We reverse the Board’s decision because the appointing authority failed to prove (1) Grego followed the procedure required by Chapter II, Section 1.2 of the Manual of Responsibilities Rules and Regulations for Personnel of Fire Division Safety Department Jefferson Parish before taking his action; (2) Warrendorff was adequately noticed of the charges upon which his dismissal was predicated; and (3) the substance of the charges against appellant.
La.Const.1974, Art. 10, § 8 requires the appointing authority to prove its action against the disciplined employee was proper and warranted. Shelfo v. LHHRA, Pinecrest State School, 361 So.2d 1268 (La.App. 1st Cir. 1978). The appointing authority did not carry this burden.
First we note the manual gives Gre-go sole discretion to discipline by involuntary retirement, fining, reprimanding or suspending a subordinate; however, before he may impose a demotion/pay reduction sanction he must follow this procedure:
“E. If a situation warrants more drastic measures than as outlined in D-l, 2, 3, or 4, such as reduction in pay, demotion, or dismissal, a complete record of events leading up to such action, together with recommendations shall be submitted in writing to the Director of Safety for concurrence and final approval. In the interim period awaiting concurrence the Fire Division Superintendent may invoke action as outlined in D-2 above.”
Grego did not submit a complete written record of events upon which the discipline was based to his superior Amundson prior to writing the disciplinary letter to appellant. The intent of the quoted passage is to *537 afford the employee review by the “higher authority” before any action is taken because it is of such a drastic nature. When the higher authority has a written summary that completely outlines the basis for discipline, then he is in a position to thoughtfully weigh the appropriateness of the recommended action. In this case Amundson merely joined in the letter to note his approval. Even were we to conclude the Amundson concurrence satisfied the quoted requirement, we nonetheless question the adequacy of the written notice to appellant. It failed to apprise him of the charge upon which the appointing authority and the reviewing board ultimately rested his demotion in rank and pay.
Civil Service Rule 12.3 states in case of' removal, demotion or reduction in pay for cause of a permanent, employee the appointing authority must furnish detailed written reasons for the action taken. Shelfo v. LHHRA, Pinecrest State School, supra. (Warrendorff is a classified civil service employee.) The purpose of the re quirement is to apprise the employee in detail and to limit any subsequent proceeding to the stated ground. Lemoine v. Department of Police, 348 So.2d 1281 (La.App. 4th Cir. 1977); and Paulin v. Department of Safety and Permits, 308 So.2d 817 (La.App. 4th Cir. 1975). Superintendent Grego bases the discipline on multiple incidents of insubordination; however, the letter alluded to seven past reprimands indicating copies of each were attached but the record only contains one prior written reprimand.
Assuming further the prior reprimands unattached to the disciplinary letter but referred to by it satisfied the notice requirement, we must still reverse on the merits.
The appointing authority has not sustained the burden of proving Warrendorff has a history of insubordination. In addition to the June 7, 1978 incident, there is evidence appellant was reprimanded for leaving town on a New Year’s Eve weekend some five and a half years before. Further the record suggests that under the circumstances Warrendorff could reasonably conclude he was free to go to Lafitte without authority from a superior when he was asked to investigate arson in another area of the Parish. On May 9, 1978, Safety Director Amundson by letter advised all volunteer fire districts that the Arson Section of Fire Prevention would be made available to them on request. Chief War-rendorff, by virtue of this communique, could reasonably conclude this letter instructed him to assist in arson investigations.
Whether this written directive had the effect of superseding chain of command rules verbally transmitted is unimportant to our result. What is significant is that the action taken by Warrendorff that day might be viewed as authorized by his superior or as an act of insubordination. It is material that the letter of May 9 could have created confusion as to whether in instances of arson investigation requests the Chief still needed authority to leave the district from his superior. Insubordination suggests the actor willfully disobeyed orders.
In any event this questionable incident and a reprimand given five and a half years earlier can hardly be categorized as a “history” of insubordination.
We believe there may be another ground for reversal.[1] However, our conclusion is *538 sufficiently supported by the above and, for that reason, we do not pass on or further consider the other ground.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that Warrendorff’s rank be restored to that of chief retroactive to June 19,1978 and that he be paid the differential between what he would have earned as a chief and what he received as an inspector since that date. Defendant is to pay all costs of these proceedings.

REVERSED AND RENDERED.

. Chapter II, Section 1, of the “Manual of Responsibilities Rules and Regulations for Personnel of Fire Division — Safety Department Jefferson Parish” provides for the “Fire Division Superintendent” whose responsibility extends throughout Jefferson Parish, including all districts. Section 2 “Commanding Officer” for the first time uses the term “district” in referring to a “Fire District Chief.” From these two sections it is clear that the district is a subdivision of the parish, and that the geographical jurisdiction of a district chief is limited while the superintendent has parish-wide jurisdiction. Section 3 dealing with the “Fire Prevention Chief’ (Warrendorff) does not suggest that his responsibility is confined to a district. He is in the same supervisory status as the fire district chief, but his jurisdiction must be parish-wide since he is the only fire prevention chief in the fire division. Section 3.2B, which is the section under which Warrendorff was ostensibly disciplined, bears out this point of view. This section provides that he is to function “within the jurisdictional boundaries of the Jefferson Par *538 ish Fire Division." The word “division” is not used in connection with the jurisdiction of a district chief but is used only in connection with the superintendent. In other words, the fire division of the safety department means the whole of Jefferson Parish and the fire prevention chief, like the fire division superintendent, has jurisdiction parish-wide in contrast to the fire district chief whose jurisdiction is confined to a district of the division. Thus, if this conclusion is correct, Warrendorff clearly did not disobey orders since he was required to report to his superior officer only if he was leaving his jurisdiction and as Lafitte was a portion of his jurisdiction, no report was required.